**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| MLR, LLC, | |
| Plaintiff, | |
| v. | Case No. 1:14-cv-135 (GBL/TRJ) |
| DELL INC., | |
| Defendant. | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DELL INC.'S**
**MOTION TO COMPEL DISCOVERY FROM PLAINTIFF MLR, LLC**

Pursuant to this Court's ruling from the Bench on October 3, 2014, Defendant Dell Inc.

hereby submits its Supplemental Brief in Support of its Motion to Compel Discovery from

Plaintiff MLR, LLC.

**I.     INTRODUCTION**

MLR has failed to meet its burden of showing that the more than 13,000 documents on its

privilege log fall within the protection of the attorney-client privilege or the work product

doctrine.   Specifically, MLR has failed to demonstrate that the communications contain

*primarily* legal advice or were created *because of* the prospect of litigation.   Through its

privilege log, MLR is attempting to shield its business operations related to the monetization of

its patent portfolio (MLR's sole business) from review by Dell, this Court, and/or the jury in this

case.  MLR's broad assertions of privilege are improper and should be rejected.

**II.    THE IMPROPERLY WITHHELD DOCUMENTS ARE RESPONSIVE TO
DELL'S DISCOVERY REQUESTS.**

On September 24, 2014, MLR served its Privilege Log relating to MLR's Third

Document Production. (*See* Ex. A, Privilege Log for MLR's Third Document Production (Vol.: DC_MLR_DEL002- Bates Range: MLR-DEL0001565-0015313).) In Entry Nos. 1-3, 5-7, 9, and 11-12, MLR withholds communications related to MLR's licensing strategy, identification of future licensing targets, and pre-litigation licensing efforts. (*See* Ex. A, Entry Nos. 1-3, 5-7, 9, and 11-12.)

MLR's improperly withheld documents are responsive to several of Dell's discovery requests. (*See* Ex. B, MLR's August 8, 2014 Objections to Dell Inc.'s First Requests for Production, Nos. 12, 13, 20, 31, 33, 34, 35, 43, and 46.) These requests include the following:

12. ***All documents and things referring and/or relating to agreements*** or contracts ***referring or relating to the Patents-in-Suit including*** without limitation ***documents and communications regarding negotiations of any such agreements***, records of consideration exchanged under such agreements, and any modifications to such agreements. (*See* Ex. B, RFP No. 12 (emphasis added).)

13. ***All documents referring or relating to discussions, correspondence, negotiations or communications relating to any actual or proposed licenses***, assignments, joint venture agreements, technology transfer agreements, settlement agreements, research and development agreements, hold harmless agreements, indemnification agreements, covenants not to sue, grants of rights, or any other agreements related to the Patents-in-Suit, any related patents and applications or any related technologies or intellectual property and any such licenses, assignments, agreements or grants ***entered into between MLR and any other party.*** (*See* Ex. B, RFP No. 13 (emphasis added).)

20. ***All documents and things referring and/or relating to any enforcement or consideration of enforcement of the Patents-in-Suit***. (*See* Ex. B, RFP No. 20 (emphasis added).)

31. ***All documents and things including any claim charts***, claim construction briefs or other memoranda ***referring to, relating to, or reflecting statements or positions taken by MLR*** in this or any other litigation or elsewhere or any of the Prior Assignees and Licensees ***regarding any interpretation, construction, or meaning of the claims*** or any of the claim terms ***of the Patents-in-Suit***. (*See* Ex. B, RFP No. 31 (emphasis added).)

33. ***All documents and things regarding any pre-filing investigation of any***

*alleged infringement of the Patents-in-Suit* by any person, entity, or party. (*See* Ex. B, RFP No. 33 (emphasis added).)

34.     *All documents and things referring and/or relating to the alleged factual basis for MLR's claims against any Defendant in this litigation*, including without limitation all documents and things considered, used, or relied upon by MLR in determining to bring this action against Dell or any other Defendant. (*See* Ex. B., RFP No. 34 (emphasis added).)

35.     *All documents and things sufficient to identify all persons who participated in any prefiling investigation or analysis for MLR*, any of the Related Entities, any of the Prior Assignees and Licensees, or any of MLR's other predecessors-in-interest of Dell or any other entity's products, systems or services. (*See* Ex. B., RFP No. 35 (emphasis added).)

43.     *All documents and things referring and/or relating to any license(s) and/or offer(s) to license any products, devices, methods, systems or instrumentalities that embody the technology of the Patents-in-Suit* and/or any Related Patents and Applications. (*See* Ex. B., RFP No. 43 (emphasis added).)

46.     *All documents and things referring and/or relating to any discussions outside of MLR referring or relating to the Patents-in-Suit*. (*See* Ex. B., RFP No. 46 (emphasis added).)

As this Court noted at the October 3, 2014 hearing on Dell's Motion to Compel, MLR

failed to rely on a relevance objection to withhold the documents in Entry Nos. 3, 5-7, 9, and 11-

12 of its Privilege Log and has therefore waived any relevance argument.[1]

Dell has not moved to compel the production of irrelevant documents. Rather, Dell has

moved for the production of documents related to MLR's licensing strategy, identification of

future licensing targets, and pre-litigation licensing efforts that are responsive to Dell's discovery

requests and are relevant to this litigation. It is entirely nonsensical for MLR to argue that it

logged more than 13,000 irrelevant documents on its Privilege Log. In fact, MLR's Opposition

---

[1] As addressed in Dell's Reply, MLR's relevance argument in its Opposition was limited to only certain sub-categories of documents related to its licensing efforts, such as draft claim charts and communications with outside counsel, documents which are in fact relevant. (*See* Def.'s Reply at 2-3.)

admits that MLR has already produced some of the documents related to its licensing strategy, identification of future licensing targets, and pre-litigation licensing efforts.  (*See* Pl.'s Br. at 9 (noting that MLR has produced "countless pages" of "negotiation materials – including correspondence between licensing counsel and infringers," even though, according to MLR's own argument, these documents purportedly require a "heightened showing" of relevance prior to production).)

### III.   MLR's PRIVILEGE LOG IMPROPERLY CLAIMS AS PRIVILEGED OVER 13,000 DOCUMENTS RELATED TO ITS LICENSING STRATEGY, IDENTIFICATION OF FUTURE LICENSING TARGETS, AND PRE-LITIGATION LICENSING EFFORTS.

Taken together, Entry Nos. 1-3, 5-7, 9, and 11-12 represent ***13,303 communications containing exclusively and/or primarily business advice*** related to MLR's vast licensing program.  (*See* Ex. A, Privilege Descriptions for Entry Nos. 1-3, 5-7, 9, and 11-12.)

In Entry No. 9, MLR is withholding ***3,058 communications solely between Charles Leedom*** [2] ***and Salvatore Marino*** related to MLR's pre-litigation licensing efforts.  These documents represent communications between Mr. Leedom and Mr. Marino acting in a business capacity related to MLR's business of monetizing its patent portfolio through its licensing efforts.  The privilege description offered by MLR demonstrates that these documents relate primarily or exclusively to MLR's business operations and reflect business communications rather than legal services:

> Email correspondence between MLR's General Counsel, Charles Leedom, and its CEO, Salvatore Marino, ***relating to pre-litigation licensing efforts***[;] discussion of attorney retainer and fee-sharing proposals; ***follow-up tracking documents; draft agendas and discussion ahead of conference calls with counsel and potential licensees***.

(*See* Ex. A, Entry No. 9, claiming Work Product & Attorney-Client Privilege (emphasis added).)

---

[2] MLR identifies Mr. Leedom as MLR's "General Counsel" while omitting the fact that he is also the President of MLR, LLC.

In Entry No. 1, MLR is withholding *146 communications solely between Charles Leedom, Salvatore Marino, and Andrew Leedom*[3] related to pre-litigation licensing, specifically notice letters and corresponding draft infringement claim charts.  These documents represent communications between Mr. Leedom, Mr. Marino, and MLR employee Andrew Leedom, acting in a business capacity related to MLR's sole business of monetizing its patent portfolio through its licensing efforts.  The privilege description offered by MLR demonstrates that these documents relate primarily or exclusively to MLR's business operations and reflect business communications rather than legal services:

> Email correspon[d]ence between MLR's General Counsel, Charles Leedom, [i]ts CEO, Salvatore Marino, and Andrew Leedom (law clerk) relating to *drafts of infringement claim charts and notice letters* prepared in anticipation of litigation.

(*See* Ex. A, Entry No. 1, claiming Work Product Privilege (emphasis added).)

In Entry Nos. 2-3, MLR is withholding *45 draft email documents prepared solely by Charles Leedom* relating to pre-litigation licensing efforts and strategy.  The privilege descriptions offered by MLR demonstrate both that an unknown number of these documents were prepared to be sent to parties other than outside counsel, and that these documents relate primarily or exclusively to MLR's business operations and reflect business communications rather than legal services:

> Draft email correspondence *relating to pre-litigation licensing efforts and strategy*, pending litigation strategy, drafts of documents to be filed in pending litigation, *identification and discussion of future licensing* and/or litigation *targets*, attorney retainer agreements and fee sharing proposals. Drafts prepared by Charles Leedom, MLR's General Counsel, but not sent. Intended recipients either not shown or are identified as Virginia W. Hoptman of Womble Carlyle Sandridge & Rice ("WCSR") (counsel for MLR), Daniel R. Mackesey (counsel for MLR), George Pazuniak (counsel for MLR), Salvatore Marino (MLR's CEO), Elizabeth Sher (counsel for Charles Leedom), and William W.

---

[3] MLR identifies Andrew Leedom as a "Law Clerk."  On information and belief,  Andrew Leedom was or is employed at MLR as the "Director of Research," a position in which he manages and directs the infringement research operations of MLR's patent portfolio.

Flachsbart (counsel for MLR).

\*\*\*

> Draft email correspondence relating to *pre-litigation licensing efforts*, infringement claim charts, and evidence of infringement. Drafts prepared by Charles Leedom, MLR's General Counsel, but not sent. Intended recipients either not shown or are identified as Joshua S. Wyde, Greta E. Dowden, Virginia W. Hoptman (MLR's counsel), John R. Keville, dcoppola@gwmail.com, Pegatronhr@pegatroncorp.corp, Trevor Arnold, hgilles@equuscs.com, and Ken Elchert.

(*See* Ex. A, Entry Nos. 2-3, claiming Work Product & Attorney-Client Privilege (emphasis added).)

In Entry Nos. 5-7 and 11-12, MLR is withholding *10,054 communications between Charles Leedom, Salvatore Marino, and outside counsel for MLR*. Outside counsel includes both outside licensing counsel and outside litigation counsel. Some of these communications may primarily relate to legal services, while others appear to primarily relate to business communications. To the extent that these documents relate to both business communications and legal services, the proper approach is for MLR to redact these documents rather than to withhold them in their entirety:

> Email correspondence between MLR's General Counsel, Charles Leedom, its CEO, Salvatore Marino, its outside litigation and licensing counsel, Virginia Hoptman, as well as Rose Berberich (paralegal at WCSR) and Linda Clayton (paralegal at WCSR) containing documents and drafts prepared in anticipation of litigation, as well as MLR's requests and Ms. Hoptman's provision of legal advice *relating to pre-litigation licensing efforts and strategy*, pending litigation strategy, drafts of documents to be filed in pending litigation, and *identification and discussion of future licensing* and/or litigation *targets*.

\*\*\*

> Email correspondence between MLR's General Counsel, Charles Leedom, its CEO, Salvatore Marino, its outside litigation and licensing counsel, Virginia Hoptman of WCSR, Daniel R. Mackesey (counsel at WCSR), and Rose Berberich (paralegal at WCSR) containing documents and drafts prepared in anticipation of litigation, as well as MLR's requests and Ms. Hoptman and Mr.

Mackesey's provision of legal advice relating to *pre-litigation licensing efforts and strategy*, pending litigation strategy, drafts of documents to be filed in pending litigation, *identification and discussion of future licensing* and/or litigation *targets*, attorney retainer agreements, negotiation of payment for legal services, and *fee sharing proposals*.

***

Email correspondence between MLR's General Counsel, Charles Leedom, its CEO, Salvatore Marino, its outside litigation and licensing counsel at WCSR (Virginia Hoptman, George Pazuniak, Steven J. Mackenzie, Jim Lennon, Daniel R. Mackesey, Theodore F. Claypoole, Oleh V. Bilynsky, James S. Kurz, Gerard M. O'Rourke, James K. Phillips, Jason C. Hicks, Martina Tyreus, and Lesley W. Fierst) as well as WCSR paralegals and legal assistants (Rose M. Berberich, Lori Arcari, Kathy Lytle, Janet McKenna, Linda Clayton, and Timothy Coffield) containing documents and drafts prepared in anticipation of litigation, as well as MLR's requests and various counsel's provision of legal advice relating to *pre-litigation licensing efforts and strategy*, pending litigation strategy, drafts of documents to be filed in pending litigation, *identification and discussion of future licensing* and/or litigation *targets*, electronic discovery review and production, attorney retainer agreements, negotiation of payment for legal services, and *fee sharing proposals*.

***

Email correspondence between MLR's General Counsel, Charles Leedom, its CEO, Salvatore Marino, and its outside litigation and licensing counsel, William W. Flachsbart and Michael R. La Porte of FG Law, as well as Cole Carter (paralegal at FG Law), containing MLR's requests and Messrs. Flachsbart & La Porte's provision of legal advice relating to *pre-litigation licensing efforts and strategy*, pending litigation strategy, drafts of documents to be filed in pending litigation, *identification and discussion of future licensing* and/or litigation *targets*. Further correspondence between MLR, counsel at FG, and Virginia W. Hoptman of Womble Carlyle Sandridge & Rice regarding litigation strategy and payment of ongoing obligations under former counsel's retainer agreement.

***

Email correspondence between MLR's General Counsel, Charles Leedom, its CEO, Salvatore Marino, and its outside litigation and licensing counsel at Niro, Scavone, Haller & Niro ("Niro Firm") (Raymond P. Niro, Jr., William W. Flachsbart, and Eric J. Mersmann) and WCSR (Virginia W. Hoptman, Daniel R. Mackesey, Steven J. Mackenzie), as well as Susan L. Swierk (legal assistant at Niro Firm) and Jay P. Kesan (retained expert), containing MLR's requests and various counsel's provision of legal advice relating to *pre-litigation licensing efforts and strategy*, pending litigation strategy, drafts of documents to be filed

in pending litigation, ***identification and discussion of future licensing*** and/or litigation ***targets***. Further correspondence  between MLR, counsel at the Niro Firm, and Virginia W. Hoptman and Daniel R. Mackesey of WCSR regarding litigation strategy, payment of ongoing obligations, and transfer of files under former counsel's retainer agreement.

(*See* Ex. A, Entry Nos. 5-7 and 11-12, claiming Work Product & Attorney-Client Privilege

(emphasis added).)

## IV.    CONCLUSION

For the foregoing reasons, Dell respectfully requests that this Court enter an Order compelling MLR to promptly produce all of the improperly withheld documents responsive to Dell's discovery requests, and to promptly serve an appropriately revised privilege log.

Date:  October 8, 2014                                  Respectfully submitted,


                                        /s/ *Charles B. Molster, III*
                                        Charles B. Molster, III
                                        (VSB No. 23613)
                                        Amadou Kilkenny Diaw (*pro hac vice*)
                                        Attorneys for Defendant Dell Inc.
                                        WINSTON & STRAWN LLP
                                        1700 K Street, NW
                                        Washington, DC  20006
                                        T: (202) 282-5988
                                        F: (202) 282-5100
                                        cmolster@winston.com
                                        adiaw@winston.com

                                        Kimball R. Anderson (*pro hac vice*)
                                        Kathleen B. Barry (*pro hac vice*)
                                        WINSTON & STRAWN LLP
                                        35 West Wacker Drive
                                        Chicago, IL  60601-5600
                                        T: (312) 558-5600
                                        F: (312) 558-5700
                                        kanderson@winston.com
                                        kbarry@winston.com

                                        *Attorneys for Defendant Dell Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2014, I electronically filed this Supplemental Brief in Support of Dell Inc.'s Motion to Compel Discovery from Plaintiff MLR, LLC with the Clerk of the Court using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record by electronic means.

/s/ *Charles B. Molster, III*
Charles B. Molster, III